OLIVER & ROBERTS WIRE CO. *v.* WHEELER.

1. Partnership—Fraudulent Conveyances—Transfer of Property to Pay Debts.

The creditors of an insolvent partnership cannot complain of a transfer of firm assets in payment of a *bona fide* obligation upon which all of the members of the firm were jointly liable.

2. Same.

Defendant negotiated the sale of a stock of goods to L., agreeing to take his farm in exchange; but, it appearing that the value of the stock exceeded that of the farm, it was agreed that W. should enter into partnership with L., and a joint note was given by them to defendant for the amount of the excess in value. Several years later, the firm becoming embarrassed, defendant repurchased the stock, turning out the note of W. and L. in part payment. *Held*, that the transfer was not fraudulent as to the creditors of the firm of W. & L., in the absence of actual fraud in the transaction, although, as between the individual members of the firm, the note was the obligation of W., and L. was merely a surety.

Error to Shiawassee; Wisner, J.   Submitted June 18, 1895.   Decided September 26, 1895.

Garnishment proceedings by the Oliver & Roberts Wire Company against Francis M. Wheeler, as garnishee of Edward M. Wheeler and Charles E. Lovett, principal defendants.   From a judgment for the garnishee defendant, plaintiff brings error.   Affirmed.

*Lyon & Hadsall*, for appellant.

*S. F. Smith*, for appellee.

Montgomery, J.   Plaintiff seeks to charge the defendant, by proceedings in garnishment, as having property, money, and effects in his hands belonging to Edward M. Wheeler and Charles E. Lovett, and as being indebted to the principal defendants as copartners.   Defendant

disclosed, denying that he was indebted to, or had any property in his possession belonging to, the principal defendants. An examination was demanded, and was had before a circuit court commissioner, and it appeared from this examination that prior to September 25, 1891, defendant and Edward M. Wheeler had been conducting a hardware business at Owosso, under the firm name of Wheeler Bros. Edward M. had no capital invested, but had a working interest. At the above-mentioned date, the assets of the firm amounted to $8,100. Defendant, being the owner of the whole stock, negotiated a sale to Charles E. Lovett, agreeing to take his farm in exchange. Upon taking the inventory, it appeared that the value of the stock exceeded the value of the farm by $3,113.62. It was then agreed that Edward M. Wheeler should become a partner with Lovett, and a joint note was made by Edward M. Wheeler and Charles E. Lovett for the amount of the difference between the price of the stock and the farm. The business was conducted by Lovett and Wheeler until June 7, 1894, when the garnishee defendant, Francis M. Wheeler, bought back the stock, fixtures, and accounts, paying therefor $5,600, by assuming a chattel mortgage of $2,100, paying $1,000 in cash, and turning back to Wheeler & Lovett the note of $3,113.62, upon which there remained due to the defendant $2,500. The plaintiff demanded a trial of the issues, and a trial was had before the court with a jury.

Some of the assignments are based upon exceptions to testimony bearing upon the question of whether the note was received as a copartnership note, or as the note of Wheeler, upon which Lovett was surety. We think it unnecessary to discuss these exceptions in detail, for we think it appears by the original examination that the sale was made to Wheeler & Lovett, and that this note was received as a part of the consideration; and we think it is equally clear that, as between Wheeler and Lovett, the obligation was intended to be Wheeler's, and that Lovett

was a surety. Nevertheless, the note was a joint obligation of the two, in form and in law. It is contended that the note was the individual debt of one partner, and that, after the insolvency of the partnership, the partnership assets were turned out to pay the debt, with the knowledge of the party who took them, and that the creditors occupy a position entitling them to assail this transfer, and set it aside. We think this position cannot be maintained. This property was certainly equitably liable for the purchase price. The legal owners were jointly liable to the defendant, and the property was subject to be seized by a process against the two, who were the only members of the firm, and the only ones legally interested in the property. Pars. Partn. § 248, note 1; *Hall* v. *Richardson,* 66 N. H. 205; *Saunders* v. *Reilly,* 105 N. Y. 12; *Couchman* v. *Maupin,* 78 Ky. 33. This being the case, it would seem to follow logically that the parties might, by agreement, turn out the same property in the payment of a debt. The case is quite different than it would be if the debt were in fact the obligation of but a single partner, and the property not subject to seizure. In a case of the distribution of the assets of a copartnership in bankruptcy, it is true, a creditor who holds the joint obligation of all the partners is not permitted to share in the distribution of the copartnership property (Pars. Partn. § 391; Bates, Partn. § 829); although the authority upon this question is not uniform (see cases cited in note to Bates, Partn. § 829, and the comments of the author in Pars. Partn. § 391). While recognizing this rule of distribution in bankruptcy, we can see no reason why, in case there is no infringement of the assignment statutes, and in the absence of a bankruptcy law, the legal owners of the property may not turn it out in payment of a debt upon which it is subject to seizure by legal process.

Plaintiff also insists that the question of whether this transfer was in fraud of creditors of Wheeler & Lovett should have been submitted to the jury; the statement in

the brief being that payment for the property "by in-
dorsement on an individual debt to him of one partner,
who was his brother, of the greater portion of the pur-
chase price, the price paid, and the indefiniteness, to say
the least, as to what became of the $1,000 cash paid,
which plaintiff insisted was a pretense merely, and in-
tended only for the purpose of relieving the defendant
from the position of having paid nearly the whole pur-
chase price by a credit on a precedent debt from one
partner to him, were all evidences of fraud, which the
plaintiff was entitled to have submitted to the jury."
This contention is, in large part, based upon the assump-
tion that this was the individual debt of Edward M.
Wheeler, whereas, in fact, as we have shown, it was
the joint obligation of the two, and a demand enforceable
against the two, and against the very property purchased
by the defendant. Nor do we think there is any in-
definiteness in the statement of the witness as to what
was done with the $1,000 cash. He stated that it was
laid down on the desk, but he does not know which of
the defendants took it. This can hardly be said to be
evidence of bad faith, and upon a full examination of the
record, the case depending in most part upon the
testimony of the garnishee defendant, we are unable to
discover any fact or circumstance from which the jury
would be justified in finding anything other than that the
defendant in good faith bought and paid for these goods,
if, as matter of law, he was entitled to use in payment
the note in question. Having determined that he had
this right, we think no error was committed by with-
drawing the case from the jury.

The judgment will be affirmed, with costs.

The other Justices concurred.