LANSING BOILER & ENGINE WORKS v. JOSEPH T. RYERSON & SON
et al.

(Circuit Court of Appeals, Sixth Circuit.  February 18, 1904.)

No. 1,252.

1. BANKRUPTCY—FRAUDULENT CONVEYANCES—INTENT.

Bankr. Act, § 3, subsec. 1 (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), makes the execution of those conveyances which by the common law and the statute of Elizabeth were held void, as tending to hinder, delay, or defraud creditors, a ground for adjudicating the grantor a bankrupt;  and subsection 3 relieves such grantor from the consequences of subsection 1 if he can prove that at the date of filing the petition he was solvent.  *Held,* that the test as to whether a conveyance by an alleged bankrupt was fraudulent, within subsection 1, is the bona fides of the transfer, and hence it was error for the court to assume that, because a mortgage executed by the alleged bankrupt covered the whole of its property, it was necessarily within such section, and to refuse to admit evidence of the good faith of the transfer.

2. SAME—STATUTES—CONSTRUCTION.

Bankr. Act, § 3, subsec. 2 (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), provides that the transfer by a debtor, while insolvent, of any portion of his property to some of his creditors, with intent to prefer them over others, shall constitute an act of bankruptcy;  and the term "insolvency" is defined by section 1, cl. 15, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419] as the condition of a person whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall

not, at a fair valuation, be sufficient in amount to pay his debts. *Held*, that the "property conveyed," as used in such provisions, in so far as it related to a mortgage of a corporation's entire property, did not include the mortgagor's remaining estate, where, as in Michigan, the mortgage does not transfer the title, but creates a lien only, and hence, where such estate was greater in value than the mortgagor's unsecured debts, the execution of the mortgage did not constitute an act of bankruptcy.

Appeal from the District Court of the United States for the Eastern District of Michigan, in Bankruptcy.

Certain creditors of the Lansing Boiler & Engine Works, a Michigan corporation engaged in manufacturing and mercantile pursuits at Lansing, in that state, filed their petition in the District Court about May 1, 1903, praying that, for causes set forth in the petition, the said corporation should be adjudged bankrupt. The petition alleged the present insolvency of the corporation, and that it had committed certain acts of bankruptcy, as follows: (1) In that on January 10, 1903, it conveyed to a trustee, for the benefit of some, but not all, of its creditors, all its property, with intent to hinder and delay its creditors, and that the trustee had accepted the trust and taken possession of the property. (2) In that on the day last mentioned it executed to the same trustee, for the benefit of the same creditors, a mortgage of all its real and personal property, intending thereby to hinder and delay its creditors. (3) In that it executed such a mortgage as is above stated, intending thereby to hinder and delay its other creditors, of which the petitioners are a part. (4) "In that it did heretofore, to wit, on various dates since that time, pay divers and sundry other creditors, while insolvent, intending by so doing to prefer such creditors so paid over the other creditors." (5) "In that it did, while insolvent, transfer various and sundry portions of its property to certain of its creditors, intending to prefer such creditors over other creditors." The respondent appeared and answered the petition, denying each and all the alleged acts of bankruptcy, and denying that it then was, or at any time had been, insolvent. The issues were tried before the court, no jury having been demanded. Upon the evidence submitted, the court adjudged the respondent, the Lansing Boiler & Engine Works, bankrupt. From this adjudication, respondent appealed.

Thomas, Cummins & Nichols and Russell Ostrander (Clark, Jones & Bryant, of counsel), for appellant.

Bowen, Douglas, Whiting & Murfin, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

Having made the foregoing statement of the case, SEVERENS, Circuit Judge, delivered the opinion of the court.

Although the acts of bankruptcy alleged in the petition were technically several, it is quite clear from the record that the ground relied upon consisted in the giving by the corporation on January 10, 1903, a mortgage of all its property to a trustee for the benefit of a part of its then existing creditors, with intent, as is alleged, to hinder and delay its creditors, and the further ground that at the date of the transaction the corporation was insolvent, and that it was intended thereby to prefer some of its creditors. The evidence submitted to the court on the hearing showed that at the date alleged, January 10, 1903, the respondent gave a mortgage of all its property to a trustee to secure the payment of certain portions of its indebtedness, amounting to about $27,000. The petitioners were not among those thus secured. The respondent defended upon the grounds that, at the time the mortgage was given, its property, at a fair valuation, was worth $70,000 or more, and that all its debts, including those named, did not amount to more than $35,000; that the giving of the mortgage was

without any fraudulent intent, and was for the purpose of securing bona fide indebtedness; and that it was not insolvent either at the time the mortgage was given, or at the time the petition was filed. And the respondent tendered evidence tending, as was claimed, to support these several propositions. The court, however, was of opinion that, inasmuch as the mortgage covered all the property of the respondent, it could not but be that the creditors not secured were hindered and delayed thereby, and that the mortgagor must have known and intended that consequence, and refused to admit evidence to show that the mortgagor did not intend to hinder, delay, or defraud its creditors by the giving of said mortgage. Touching the charge of having given preference while it was insolvent, the court held that, in estimating the fair valuation of the assets of the respondent, only such property as was not covered by the mortgage should be taken into account; and, it not being claimed that there was property of that description, the court refused to admit evidence offered to prove that the fair valuation of the property mortgaged was as much as $70,000.

We think the court erred in its view of the law in regard to these questions.

As to the first, it is to be observed that subsection 1 of section 3 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]) makes those conveyances which by the common law and the statute of Elizabeth were held void, because fraudulent, a ground for adjudicating the grantor a bankrupt. No question of solvency or insolvency or of preference arises under this subsection, except as they bear upon the issue of good faith in making the conveyance, saying nothing now of the provisions of subsection 3 of section 3, which relieves the consequences of subsection 1, if the respondent can prove that at the date of filing the petition he was solvent. The language of subsection 1 of section 3 is the familiar language of statutes against conveyances fraudulent as against creditors, and we think there can be no doubt that Congress intended the words employed should have the same construction and effect as have for a long period of time been attributed to those words. Githens v. Shiffler (D. C.) 112 Fed. 505. And so construed, the test of the conveyances intended by subsection 1 of section 3 is that of the bona fides of the transfer. Loveland's Bank. (2d Ed.) § 51. For it is the well-settled law that a conveyance made in good faith, whether for an antecedent or present consideration, is not forbidden by such statutes, notwithstanding the effect may be that it hinders or delays creditors by removing from their reach assets of the debtor. This is the law in Michigan. Hill v. Bowman, 35 Mich. 191; Jordan v. White, 38 Mich. 253; Olmstead v. Mattison, 45 Mich. 617, 8 N. W. 555; Oliver & Roberts Wire Co. v. Wheeler, 106 Mich. 408, 64 N. W. 195. We think, therefore, that the court erred in assuming that, because the mortgage covered the whole property of the debtor, it necessarily followed that a case was made out under said subsection 1, and that no proof of good faith could prevail against that assumption. Upon the vital question of the bona fides of the mortgage, it was of importance to consider, among other things, what was the value of the property mortgaged, when compared with the indebted-

ness of the company. Moreover, the testimony of those conducting the transaction was admissible to prove its actual good faith. In the end, when all the available light had been shed upon it, the court would be in a situation to judge whether the transaction was prompted by a fraudulent motive or a legitimate one.

If it was found that the mortgage was given with a fraudulent motive, and so within said subsection 1, a further question would arise under subsection 3 of section 3—whether or not the respondent was solvent at the time of the filing of the petition. As the ground of that defense, and the considerations applicable thereto, are of the same nature as those inherent in the next following topic, we will postpone it to that place.

The second subsection of section 3 defines as an act of bankruptcy the transfer by the debtor, while insolvent, of any portion of his property to some of his creditors, with intent to prefer them over the others. We assume that in the present instance there was an intent to give a preference to the beneficiaries of the mortgage. However, such preference is not forbidden unless made while the debtor is insolvent. The term "insolvency" is thus defined in clause 15 in section 1 of the act:

"Cl. 15. A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419].

In determining the question of the insolvency of the debtor, the District Judge was of opinion that the language of said clause 15, excluding from the estimate any property which the debtor may have transferred with intent to defraud his creditors, would prevent the consideration of any part of the value of the mortgaged property as the assets of the debtor in the reckoning. It was contended for the respondent that the continuing interest of the respondent in its property should be considered as having remained in the corporation, and that, as that amounted to $43,000, and the unsecured creditors had claims amounting to only $8,000, or, putting it in another way, that as the value of the assets was $70,000, and the total indebtedness, secured and unsecured, was $35,000, there was no ground for the allegation that the company was insolvent when it gave the preference, or at the date of filing the petition. Holding to his view as above expressed, the District Judge refused to go into the inquiry in respect to the value of the company's property, or to consider its value subject to the mortgage. The correctness of this ruling depends upon the construction to be given to the words in said clause 15 of section 1, "exclusive of any property which he may have conveyed," etc., with intent to defraud his creditors. Of course, if it be found that the mortgage was given bona fide, no question of this sort will arise. But assuming that issue to be found otherwise, the question of construction above stated arises.

By the law of Michigan, a mortgage, whether of real or personal property, does not convey the title, but imposes a lien only for the

amount secured. Lucking v. Wesson, 25 Mich. 443, 445; People v. Bristol, 35 Mich. 28, 32. And the estate of the mortgagor is a valuable asset, at least for the amount of the excess, even if the debt should not be otherwise paid. The mortgagor's estate may be taken on execution issued on a judgment against him, or it may be sold by him in the ordinary course of business at private sale, and produce its value. This estate is not transferred by the mortgage. How the case might be if the conveyance was of the whole legal estate, we are not called upon to determine. It might be that such a conveyance would be an impediment or hindrance to the trustee in the execution of his trust which the debtor could not be allowed to interpose. But here, in respect to the excess, the trustee is not obstructed. We think that the taint of mala fides intended by clause 15 of section 1 extends only to that which is conveyed, or purports to be conveyed, and not to an interest or estate which it does not pretend to convey. Loveland's Bank. (2d Ed.) p. 156. And, on general principles, if we discard the old test of insolvency, it seems absurd to say that a man is insolvent because he has transferred some of his estate with intent to defraud his creditors, when he has an estate remaining which is abundantly sufficient to pay all his debts, and open to seizure for the satisfaction thereof, or which he has an absolute right to dispose of and liquidate in cash.

In Vaccaro v. Security Bank, 103 Fed. 436, 43 C. C. A. 279, this court, in holding that a partnership could not be held insolvent so long as any of its members were solvent (that is to say, so long as any such member had sufficient property, after his private debts were paid therefrom, to pay the creditors of the firm), held, in effect, that assets charged with a prior lien should be credited to the debtor, to the extent of the surplus, in determining his solvency. As the debts of an individual partner are a paramount charge upon his private estate, and the partner's estate would come to the trustee burdened therewith, such conditions would very much resemble the essential facts we have in the present instance, and there is no difference in any material fact which would remove this case from the operation of the principle thus recognized. Our conclusion would seem to be in accord with the motive of Congress in prescribing the new definition of insolvency.

If what the respondent offered to prove is the fact, it had enough, after satisfying the mortgage lien in full, to pay these other creditors several times over. It cannot be doubted that this equity of redemption, if we call it such (though it is not a very accurate expression as applied to these conditions), or the surplus interest or estate of the mortgagor, is an asset in the hands of the trustee, and there is no impediment to his appropriating it. We are therefore of opinion that the court was mistaken in thinking it could not take into account the value of the estate not conveyed by the mortgage, in determining the value of the assets of the respondent, in order to compare them with its debts.

The order appealed from will therefore be reversed, with directions to take further proceedings upon the footing of the petition not inconsistent with this opinion.