BEAN–CHAMBERLAIN MFG. CO. v. STANDARD SPOKE & NIPPLE CO.
et al.

(Circuit Court of Appeals, Sixth Circuit.   July 16, 1904.)

No. 1,302.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—INTENT IN MAKING TRANSFER OF PROPERTY.

In determining the question whether a transfer by an insolvent manufacturing corporation of the greater part of its business and property to another corporation, organized largely by the same persons, in exchange for the stock and bonds of the latter, was made in good faith, or with intent to hinder, delay, or defraud its creditors, so as to constitute an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 3, cl. "a," subd. 1, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], the jury may properly take into consideration the natural and necessary result of the transfer, and may infer the intent therefrom.

2. APPEAL—REVIEW—EXCEPTIONS TO CHARGE.

A general exception to the refusal of a number of requests to charge is not well taken if any of such requests were properly refused.

Appeal from the District Court of the United States for the Eastern District of Michigan.

In Bankruptcy.

Fellows & Chandler, for appellant.

Bowen, Douglas, Whiting & Murfin, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge.   This is an appeal from a decree of the lower court, based upon the verdict of a jury, adjudging the appellant, the Bean-Chamberlain Manufacturing Company, a bankrupt.

The principal act of bankruptcy relied on by the petitioning creditors (appellees) was that the appellant, in violation of subdivision 1 of section 3, cl. "a," of the bankruptcy act, had "conveyed, transferred, concealed or removed, or permitted to be concealed or removed, any [some] part of his property with intent to hinder, delay or defraud his creditors, or any [some] of them."   Act July 1, 1898, c. 541, 30 Stat. 546, 547 [U. S. Comp. St. 1901, p. 3422].

There was testimony tending to establish the following facts:   In the year 1901 the appellant, a Michigan corporation, was engaged in the manufacture of pumps, farm implements, and bicycles at Hudson, Mich.   It had been so engaged for some years.   The bulk of its property was employed in the pump business.   Roscoe Bean was its president; Henry G. Chamberlain, its secretary; and O. R. Pierce, a director, and the indorser on more than half its paper.   In the latter part of this year an inventory showed its assets amounted to $72,135.83, while its bills payable aggregated $75,440.42.   Some of its bills were overdue.   Neither the profits nor the prospects of the company were encouraging.   In the year 1902 a company was organized at Toledo, Ohio, called the United States Pump & Supply Company.   The leading object of this company was to take over and conduct the property and business of the appellant.   Bean and Chamberlain, the president and secretary of the appellant, were made its president and secretary,

and Pierce, the leading director and backer of the appellant, one of its directors. The authorized capital stock of the Toledo company was $400,000, half common and half preferred. But $105,000 of the preferred stock and half that much of the common was issued, and of all this but $25,000 was sold on the market. Aside from the appellant, the original arrangement contemplated the taking over of the Standard Manufacturing Company of Toledo at a valuation of $15,000. Later the Lucas Pump Company, of Toledo, was absorbed at a valuation of $8,000. The original arrangement provided for the purchase of the entire plant and business of the appellant. For this, $75,000 in stock was to be given, and cash for the stock on hand to be appraised. This was subsequently modified, and in July, 1903, only the pump plant and business of the appellant were sold on the following terms: $54,000 of the par value of the preferred stock of the United States Pump & Supply Company; $27,000 of the common stock of the same company; $30,000 of the par value in two-year bonds of the same company. All of this being turned over to Mr. Fellows, the attorney of the appellant, as trustee for it. This stock was received by Mr. Fellows upon the condition that it should not be put upon the market for a period of one year. The bonds were secured by a deed of trust on but a part of the Toledo company's property; the deed containing a condition that no bondholder should have the right to institute any action foreclosing the mortgage, except in case of refusal on the part of the trustee to perform some duty imposed upon him. The Toledo company was unable to meet its maturing obligations, owing to a want of ready money, and it never paid any dividends upon its preferred stock. No public record was made of the sale by the appellant to the Toledo company. The sale to the Toledo company was made in July. In September an option was given to the Chamberlain-Rider Company for $9,000 on the implement business, and to the Hudson Manufacturing Company for what proved to be $1,800 on the bicycle business of the appellant. Both these companies were organized or to be organized by former stockholders or employés of the appellant for the purpose of taking over what was left of its business. Following these deals, the books of the appellant company were placed in the hands of Pierce for the purpose of collecting its assets and winding up its business. The appellant had ceased to be a going concern. One of the witnesses testified that Mr. Chamberlain told him that for the past two years they had been losing money on account of the bicycle business, and that they had put the matter in Mr. Pierce's hands to close up. As to the business of the Bean-Chamberlain Manufacturing Company, it had ceased doing business, and, as soon as Mr. Pierce could get things wound up, the company would go out of existence. Mr. Bean was a witness, and testified that they were closing up the business of the Bean-Chamberlain Company as rapidly as they could, and that would have been the ultimate end. That was what they were striving for. Including the real estate, farm implements, and bicycle business, optioned, but not sold, the assets of the appellant at the time of the filing of the petition in bankruptcy, aside from the stock and bonds received from the Toledo company, did not exceed in value $25,000. The liabilities amounted to over $75,000.

There being testimony tending to show the above facts, the court left it to the jury to say whether the sale to the Toledo company was made with intent to hinder, delay, or defraud the creditors of the appellant; advising the jury that, in determining the question of intent, they should consider the necessary result of the acts done by the appellant, for every one is presumed to contemplate the necessary consequences of his conduct.   It is now contended that the instruction of the court below upon this point was inconsistent with the construction placed by this court upon subdivision 1 of section 3, cl. "a," of the bankruptcy act, in Lansing Boiler & Engine Works v. Ryerson & Son (C. C. A.) 128 Fed. 701.   The appellant complains because the court did not instruct the jury that the whole question for them was one of actual intent, and that if they should find that the appellant made the transfers in good faith, without an actual intent to hinder, delay, or defraud its creditors, it could not be adjudged a bankrupt, whatever the result of the transfers may have been.   We fail to see wherein the position of the court was inconsistent with our holding in the Lansing Boiler Case. In that case the court below took the view that the giving of a mortgage by a manufacturing company on all its property to secure a part of its indebtedness was an act of bankruptcy, although the property mortgaged was worth enough at a fair valuation not only to liquidate the mortgage, but to pay all the remaining debts of the company twice over.   We held that the court erred in assuming that, because the mortgage covered the whole property of the debtor, it necessarily followed that a case was made out under subdivision 1, and that no proof of good faith could prevail against that assumption, saying:

"Upon the vital question of the bona fides of the mortgage, it was of importance to consider, among other things, what was the value of the property mortgaged, when compared with the indebtedness of the company.   Moreover, the testimony of those conducting the transaction was admissible to prove its actual good faith.   In the end, when all the available light had been shed upon it, the court would be in a situation to judge whether the transaction was prompted by a fraudulent motive or a legitimate one."

The fault we found with the court in that case was that it refused to consider the question whether the mortgagor acted in good faith in giving the mortgage.   Our holding was that if the mortgage was given in good faith, and without intent to hinder, delay, or defraud creditors there was no act of bankruptcy.   There was testimony tending to show that the property mortgaged was worth $70,000, the mortgage was for $27,000, and the remaining creditor's claims amounted to $8,000.   If this was credible, there was left property worth $43,000 to pay claims aggregating $8,000, and the court should have considered these facts both in determining whether the company was insolvent when it gave the mortgage, and whether the mortgage was given in good faith. In the present case the court submitted to the jury the question whether the transfers complained of were made in good faith, or with intent to hinder, delay, and defraud, saying:

"The intent with which an act was done is very difficult to prove.   Of course, the mind cannot be probed to ascertain just what that intent was.   It must be inferred, and usually is inferred, from the circumstances, from the act itself, and from its necessary effect.   If this operation necessarily was to

produce the consequences of the act prohibited by the statute, you may infer the intent to defraud—the intent to hinder, delay, or defraud."

After commenting upon the facts, the court left them to the consideration of the jury, advising them that they were the judges of the facts. In determining the question of the solvency of the company, the court excluded from consideration the stock and bonds received from the Toledo company and deposited in the hands of Fellows, as trustee, because they were under restrictions which rendered them unavailable to meet the claims of creditors. The charge, as a whole, fairly left the determination of the question of good faith to the jury. While the court commented upon the facts, and indicated a view unfavorable to the appellant, at the same time it advised the jurors that they were the final judges of the facts, and that whatever views it might indicate with respect to the facts were in no sense binding upon them. We have no criticism to make because of these comments, since we heartily concur in the views expressed. In our opinion, the proof was of such a nature that no injustice was done to the appellant by the action of the court. For the court to have complied with the request of the appellant, and instructed the jury that, ignoring the natural and necessary result of the transfers made, they should direct their attention solely to the good faith of the transaction, and, whatever the result of its conduct, acquit the appellant, if they found it had acted in good faith, would have been misleading. It was the right of the jury to determine the intent, but in doing so it was the duty of the jury to consider the testimony and the natural presumptions which flow from acts done by design. If a company in failing circumstances willfully places all its property beyond the reach of its creditors, that circumstance is a fact to be considered in determining whether it did so in good faith, without any intent to hinder, delay, or defraud its creditors.

There was no specific exception taken to any particular portion of the charge of the court as given. Ten requests to charge were presented by the respondent below and refused. The exception to this refusal was so worded that we are disposed to regard it rather as a general exception to the refusal to charge all the requests in a lump, than a specific exception to the refusal to charge each separate request (Bogk v. Gassert, 149 U. S. 17, 26, 13 Sup. Ct. 738, 37 L. Ed. 631; Holloway v. Dunham, 170 U. S. 615, 619, 18 Sup. Ct. 784, 42 L. Ed. 1165), so that, some of the requests (notably the eighth and ninth) being clearly unsound, under the rule all are disposed of. We resolve the doubt as to the exception in favor of its being a general one, not only because the proof so abundantly sustains the verdict, but, if the exception be taken as a specific one, we are satisfied that the requests which were proper were sufficiently covered by the charge as given, and that no prejudice resulted to the appellant from the refusal to charge.

The judgment of the court below is affirmed.