### WILLIAMS v. CHOCTAW, O. & G. R. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1906.)

No. 1,555.

**1. TRIAL—MOTION FOR DIRECTION OF VERDICT.**

On a motion to direct a verdict, the court must take that view of the evidence most favorable to the party against whom the direction is requested, who is entitled to the benefit of all fair and reasonable inferences from the testimony.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 401, 402.]

**2. MASTER AND SERVANT—INJURY TO SERVANT—DUTY TO OBSERVE DEFECTS IN APPLIANCES.**

A railroad employé, working constantly with an engine in the yards, may not close his eyes to obvious and dangerous conditions or defects therein, and recover for an injury resulting therefrom; but, if an accident occurs, and he pleads ignorance, he must show that his ignorance was not only actual, but excusable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 710, 712, 718.]

**3. SAME—ACTION FOR INJURY—CONTRIBUTORY NEGLIGENCE.**

Plaintiff was foreman of a switching crew, working with an engine in railroad yards, and had used the same engine for a month, when he slipped from the footboard at the rear of the tender, at night, and was injured. It appeared that the footboard was defective, in that it sloped downward, and was also icy that night, by reason of the leaking of the tank. Such defects had existed for some time, and plaintiff had worked

with the engine every day, and had ridden on the footboard. The engine was backing, making the position one of danger, and plaintiff was not compelled to occupy it at the time, but took it for greater convenience. *Held,* that he was chargeable with knowledge of the defects which he ought to have possessed in the exercise of ordinary care and observation, and was guilty of contributory negligence which precluded him from recovering for the injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 718.]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

E. G. Bell, for plaintiff in error.

E. E. Wright, for defendants in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit brought by Williams, the plaintiff below, against the defendant railroad companies, to recover damages for injuries received in the yards at Memphis, Tenn., while employed as foreman of a switch engine and crew. At the time of the accident Williams was on the rear end of the tender. The train was backing, so he was in front of it. Attached to the rear of the tender was a footboard. The night was cold and freezing. He desired to get off the train to deliver some bills and to see that a switch was all right. As he went to get off, his foot slipped on the footboard and he fell under the train, losing one leg and having the other badly mangled. He claimed in his petition that the footboard and the tank above it were defective; the footboard because the L-shaped irons which supported it at the rear of the tank, were bent inward, giving it a dangerous slope, and the tank because it leaked, allowing the water to trickle down on to the footboard, where it froze, creating an icy, slippery surface. Williams claimed he was not aware of the condition of the footboard, and, relying upon the companies having used ordinary care in providing a reasonably safe place and appliances for his use, stepped upon it, when the accident resulted without his fault. The court below directed a verdict for the defendants on the ground either that Williams knew or ought to have known of the condition of the footboard, and assumed the risk of using it, or was guilty of contributory negligence in using it under the circumstances, or both.

The rule is well settled that, where a motion is made to direct a verdict, the court must take that view of the evidence most favorable to the party against whom the direction is requested. In this case, Williams was entitled to receive the benefit of all fair and reasonable inferences from the testimony. Railway Co. v. Lowery, 20 C. C. A. 596, 74 Fed. 463; Mason v. Yockey, 43 C. C. A. 228, 103 Fed. 265; Riley v. L. & N. R. R. Co., 66 C. C. A. 598, 133 Fed. 904. It appears from the record that Williams was an experienced railroad man. He had been employed in the business for some 18 years, first as brakeman, and latterly as foreman of the switch engine and crew. As foreman he had charge of the switch engine and crew. The tender, with its appurtenances, was deemed a part of the switch engine. It was the duty of the engineer to inspect the engine each day when he took it out, reporting any defects, and it was also the duty of Williams to

report any defects he might observe, either in the engine or the cars; but he was not obliged to inspect either. This engine had been in use in and about Memphis for about a month, and Williams had charge of it and the crew during that time. The accident occurred on the 27th of December. For two or three days before that date it had been raining, and on that date it turned cold, and in the afternoon began to freeze. The engineer, who had been in charge of the engine from the time it reached Memphis, testified that he had observed the slope in the footboard and the leak in the tender from the first, but did not report them, because he did not think they were dangerous. One of the brakemen, whose station was at the rear of the tender, testified that he had observed the slope and leak, and that an experienced man could tell, from stepping on the footboard, that it was sloping. Williams stated he had not been on the footboard the day of the accident prior to its occurrence, or for several days before, because it was raining and he rode in the cab. He admitted having been near the footboard on numerous occasions, and did not deny having been on it prior to the day of the accident, but testified he was not aware of the existence of the slope or the leak. He conceded it would have been his duty to report these defects if he had observed them, but contended it was the duty of the engineer both to inspect and to report, and, since the engineer did not report them, he insisted he had a right to rely upon the footboard being in a reasonably safe condition.

Conceding that the primary duty of inspection rested upon the engineer as the representative of the railroad companies, and that he should have reported these defects, so that the companies might have discharged their duty to use ordinary care to keep the footboard reasonably safe for the use of their employés, including Williams, nevertheless it was the duty of Williams, as a servant engaged in a hazardous occupation, to employ his faculties, as reasonably prudent men do, to ascertain the condition of the machinery and appliances provided for his use. In the case of latent defects he may rely upon the inspection of the companies; but in the case of open and patent defects he must take steps to protect himself or be held to have assumed the risk. He may not close his eyes to obvious and dangerous conditions and expect to recover in case of accident. If accident comes, and he pleads ignorance, he must show his ignorance was not only actual but excusable. Cunningham v. C., M. & St. P. Ry. (C. C.) 17 Fed. 882; Detroit Crude Oil Co. v. Grable, 36 C. C. A. 94, 94 Fed. 73; Reed v. Stockmeyer, 20 C. C. A. 381, 74 Fed. 186; McCain v. C., B. & Q. R. R. Co., 22 C. C. A. 99, 76 Fed. 125; Tuttle v. Milwaukee Ry. Co., 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114; Washington & Georgetown R. R. Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235; Southern Pac. R. R. Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391.

In the present case, the question is, not whether Williams actually knew of the slope and leak, but whether, in the proper and prudent use of his opportunities for observation, he could and should have known of them. Giving Williams the benefit of all he claims from the testimony, still the question recurs whether, if he had used his eyes when near the footboard and tank, and his sense of feeling when on

the footboard, would he not have known, would not any ordinarily prudent man, under the circumstances, have known, that the footboard sloped and the tank leaked? We are unable, after careful consideration, to satisfy ourselves that this question can rightly be answered other than in the affirmative. Conceding the slope and leak were defects which caused the accident, and that Williams did not know of their existence, we are forced to the conclusion that any person of ordinary prudence, exercising reasonable care in the employment of the opportunities for knowledge open to Williams, would have discovered them under the circumstances of this case. The knowledge that he thus ought to have acquired by the proper and prudent use of his faculties the law imputes to him, and he must be taken to have assumed the risk resulting from the use of these defective appliances. Williams had charge of this switch engine for about a month. He was near this footboard and tank every day during that time. He was certainly on the footboard before the day of the accident. In the case of Mason v. Yockey, 43 C. C. A. 228, 103 Fed. 265, where a fireman, stepping on the iron apron between the engine and tender, which had become icy from water escaping from the tender through a defective valve, had slipped and fallen from the engine, receiving serious injuries, the action of the court below in permitting the case to go to the jury was sustained on the ground that the fireman had not been at work on the engine before during that winter, that he got on it at break of day on a cold winter morning, and was kept constantly employed up to the time of the accident in the discharge of his duties as fireman, being required to fire every two or three minutes. It will be observed that, when the defect became discoverable, the engine was out on the road, and the question presented to the fireman of assuming the risk of such a defect, when the alternative was to abandon the engine and train, was quite different from that presented where the engine is in the yard of the railroad company. Still we consider this a very close decision. Of a similar character is that in the case of Le Duc v. N. P. R. R. Co., 92 Minn. 287, 100 N. W. 108, in which the plaintiff's intestate, a switchman, fell from a defective footboard at the rear of the tender of a switch engine, and was run over and killed. It appeared that his duty required him to use the footboard, and that he had never been on it before.

Taking another view: The footboard on the rear of a tender, used when the engine is backing, occupies the same relative position that the pilot of an engine does to the train when it is moving forward. It is a place of danger, not to be used unnecessarily. Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506; Kresanowski v. N. P. R. R. Co. (C. C.) 18 Fed. 229; Kane v. Erie R. R. Co. (C. C. A.) 142 Fed. 682. An experienced employé, called upon to use it, would naturally, in the exercise of ordinary care, take steps to ascertain its condition, and the nature of the foothold it would afford in alighting from the train, before intrusting himself to it. This would be especially true after dark, on a rough track, in freezing weather, with the chance of ice on the footboard. In the present case, the testimony shows it was not necessary for Williams to use this footboard in front of the moving train in order to get off. He had been riding in the cab. He might have done so that night. No reason for the change was given.

If, as he claims, he did not know the condition of the footboard, then he unnecessarily chose a place certainly of danger, and possibly of unusual danger, when one of safety was open to him. In doing this we think he acted negligently.

The judgment is affirmed.