JACKSON FIBRE CO. v. MEADOWS.

(Circuit Court of Appeals, Sixth Circuit. February 4, 1908.)

No. 1,732.

1. MASTER AND SERVANT—INJURIES TO SERVANT—TELEPHONE LINES—DUTY OF MASTER.

Where defendant maintained a telephone line as a part of its factory equipment, it was bound to keep the poles in a reasonably safe condition so as not to be dangerous to an employé required to ascend the same to repair the wires.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 173.]

2. SAME—QUESTION FOR JURY.

In an action for injuries to a servant by the fall of a telephone pole on which he was required to work, whether plaintiff in the exercise of ordinary care knew or should have known that the pole was rotten, and therefore assumed the risk of injury in ascending the same, *held* for the jury.

[Ed. Note.—For case in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1068–1088.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. TRIAL—REQUEST TO CHARGE—REFUSAL.

It was not error for the court to refuse requests to charge which were covered by instructions given.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 651–659.]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

R. R. Sneed, for plaintiff in error.

T. A. Lancaster, for defendant in error.

Before SEVERENS and RICHARDS, Circuit Judges, and COCHRAN, District Judge.

RICHARDS, Circuit Judge. The defendant below, the Jackson Fibre Company, owned and operated a cotton factory in Tennessee, and, in connection with it, a private telephone and signal system running, by poles and wires, from its office to its barn. The plaintiff below, Meadows, did the general electrical work upon this system, keeping it in repair. He was not a lineman, nor had he ever worked for a telephone company. He states he was assistant electrician, the master mechanic, Mr. Wadleigh, being the chief electrician. He says he had nothing to do with the erection and inspection of the poles, the yard foreman, Mr. Nichols, having that duty. On December 19, 1905, the wires between the office and the barn became entangled, and Wadleigh sent word to Meadows to come out and straighten the wires right away. Meadows first tried to unentangle them with a pole, but, failing in this, put a ladder up against the pole and climbed up to the cross-arm. Here he unloosened one of the wires and threw it to his assistant below. Then he told the latter to pull; he did, and the pole fell, severely injuring Meadows. It appears from the testimony that

this was a cypress pole which had been in use for about four years, and below the ground it was "doty" or affected with dry rot. It was the only old pole left, the others having been replaced that year. Nichols, the yard foreman, did this. Nichols also had a coal bin constructed around the pole. It does not appear there was any employé of the company whose duty it was made to inspect poles. The case went to the jury and there was a verdict for Meadows. The effort is to reverse, principally upon the ground that a verdict should have been directed for the defendant.

The duty of a telephone company to its employés, respecting poles, was before the court in Cumberland Tel. & Tel. Co. v. Bills, 128 Fed. 272, 62 C. C. A. 620, and in Britton v. Central Union Tel. Co., 131 Fed. 844, 65 C. C. A. 598. In the first case, the situation was somewhat akin to the present one. The plaintiff was not an experienced lineman. The company therefore owed him the duty of inspection and instruction. Whether it performed these duties, so as to warn him against the possible dangers of his employment, was a matter left to the jury. So, also, was the question of contributory negligence. 128 Fed. 274, 275, 62 C. C. A. 620. In the second—the Britton Case— the employé who was injured by the fall of a rotten pole was a lineman. His experience was not so extended as to warrant the court below in taking the case from the jury, his competency as to poles being left in some doubt by the testimony. It did not appear he was fully advised as to the proper method of inspecting poles, and we thought the question ought to have been left to the jury whether, under all the circumstances, the telephone company was not under the duty of cautioning and instructing such a lineman before putting him at the work of transferring wires from old and dangerous poles.

In the case at bar, the primary and positive duty undoubtedly rested upon the defendant below to use ordinary care to keep the pole which fell and broke in a reasonably safe condition. It was an appliance in use as a part of the telephone and electric system. It had to be used to keep that system in repair, and therefore the primary duty rested upon the defendant to keep it in a reasonably safe condition. Along with this duty it was necessary, of course, to inspect the pole from time to time to ascertain whether it was in a reasonably safe condition for use. It seems to have been conceded by the defendant that the pole was not reasonably safe—it was rotten—and it was made no employé's duty to inspect it and ascertain its condition. But obviously the primary duty could not be avoided in that way. The defense is made, however, that Meadows had charge of these electrical appliances, the poles and wires and instruments; that it was his duty to keep them in repair, and that being his duty he should have known and must have known that this pole was rotten. If, in the use of ordinary care, he must have known that it was rotten, then he assumed the risk of climbing it, and cannot recover because it fell and hurt him. Williams v. Ry. Co., 149 Fed. 104, 79 C. C. A. 146. But here comes in the question which we think was properly submitted to the jury, and upon which the verdict may rest. Did Meadows, in the exercise of ordinary care, know, or was he obliged to know, that the pole was rotten? It seems to us this was

a question peculiarly for the jury. Meadows was not a lineman; he apparently knew nothing about the poles except as supports for wires. He had not put up any of the poles; the record does not show that he knew how to inspect a pole and tell whether it was safe or not. He had been there for several years. He knew that Nichols, the yard foreman, had replaced all the poles except this one, and, so long as it remained, Meadows had a right to think it was safe. It was the duty of the company to keep it safe, and, if it did not intend to do that, then instruct him how to find out whether it was safe or not. Instead of doing this, its representative, Yard Foreman Nichols, put a coal bin around it, indicating it was safe by hindering inspection.

There was a large number of special requests made, which were refused. The exception to this refusal was so worded that it may be regarded as a general exception to the refusal to charge all the requests in a lump. Bean-Chamberlain Co. v. Standard Spoke, etc., Co., 131 Fed. 215, 218, 65 C. C. A. 201. But these requests, when examined, all rest upon, or are different ways of stating, the fundamental request, to direct a verdict for the defendant. So far as they were based on that, they were properly refused; so far as they stated general principles of law, they were covered by the general charge.

Judgment affirmed.