JULIA B. McKIBBON, Appellant *v.* NAT M. BRIGHAM, Marshal, Respondent.

Chattel Mortgage — Mortgagee in Possession — Validity — Effect of Contemporaneous or Subsequent Verbal Agree_ ment—Unlimited Extension of Maturity of Indebtedness— Sale of Mortgaged Chattels by Creditor of Mortgagor —Justification—Findings Correct, Judgment Undisturbed.

*Chattel Mortgage—Mortgagor in Possession—Validity.*

Where a mortgage on a stock of goods, by its conditions, permits the mortgagor to remain in possession and sell the mortgaged property in the usual course of trade, and it is not controlled by statutory regulation, and the rights reserved show that it is intended as a shield to the mortgagor, and it operates as a fraud upon the rights of creditors the mortgage is void in law.

*Effect of Contemporaneous or Subsequent Verbal Agreement.*

Any agreement outside a chattel mortgage, permitting the sale of the property mortgaged, whether contemporaneous with or subsequent to the making of the mortgage, will have the same effect as if stipulated and read into it.

*Unlimited Extension of Maturity of Indebtedness.*

Under Secs. 2338 and 2801, C. L. U. 1888, a clause in a mortgage allowing the mortgagee to remain in possession of the mortgaged property and sell in the usual course of business, and also stipulating that it was not expected that the mortgage should be paid when due, but that the same should be extended from time to time in order that the mortgagor should continue in business as before the mortgage was given, renders the mortgage invalid.

*Justification on Sale of Mortgaged Chattels by Creditor of Mortgagor.*

Where the facts as found show that a mortgage was invalid and fraudulent in law, a sale by the creditor of the mort-

gagor, under an attachment properly issued, or upon an execution based on a valid judgment is justified.

*Findings Correct—Judgment Undisturbed.*

> When the findings of fact are correct, the judgment will not be disturbed if in accordance therewith, even if the conclusions of law are incorrect in technical language.

(Decided October 20, 1898.)

Appeal from the third district court of Salt Lake county, Honorable A. N. Cherry, *Judge.*

Action by *Julia B. McKibbon* v. *Nat. M. Brigham* as United States marshal, to recover the value of certain personal property sold on execution. From a judgment for the defendant plaintiff appeals. *Affirmed.*

*H. J. Dininny, Esq.* and *Charles Baldwin, Esq.,* for appellant.

A creditor at large of the mortgagor cannot attack the mortgage. He must first clothe himself with a judgment or execution or some legal process against the property. Jones on Chattel Mortgages, 3d Ed., Sec. 345; Cobbey on Chattel Mortgages, Sec. 774; *Markham* v. ———, 19 Pac., 394; *Bank* v. *Bates,* 120 U. S. 536; *Thompson* v. ———, 27 N. Y. 568; *Frary* v. ———, 41 Mich., 376; *Newton* v. ———, 2 Utah, 287; *Leopold* v. ———, 16 Pac., 584; *Beckenshoff* v. ———, 19 Cal., 109.

A chattel mortgage on a stock of merchandise is not fraudulent in law because the mortgagor is allowed to retain possession and sell the goods under an agreement to account to the mortgagee for the net proceeds of the sale.

To show the trend of modern decisions we cite: *Klein* v. ———, 20 Ohio State, 110; *McFadden* v. ———, 90 Ind. 590; *Morse* v. ———, 22 Fed. Rep. 501; *Francisco* v. ———, 54 Ohio State, 307; *Wright* v. ———, 35 Mich. 231; *Ford* v. ———, 24 N. Y. Rep. 359; *Forbes* v.

————, 16 Pick, 462; *Hixon* v. ————, 44 Pac. 222; *Bank* v. *Bates*, 120 U. S., 556; *Clark* v. ————, 55 Iowa, 14; *Jeffrey* v. ————, 64 Iowa, 492; *Jewell* v. ————, 123 U. S., 426; *Howard* v. ————, 13 Pac. 556; *Ethridge* v. *Sperry*, 139 U. S., 266.

*Messrs. Stephens & Smith*, for respondents.

Where the mortgage is fraudulent in its inception no subsequent possession can cure the fraud.

Had plaintiff actually taken possession of the mortgaged property and commenced an action for the foreclosure of the mortgage we could at any time before sale, have garnished her or issued execution and levied upon the property, and justified our proceeding by showing the fraud in the inception of the mortgage. Bump on Fraudulent Conveyances, 4th Ed., Sec. 120; *Wells* v. *Langbein*, 20 Fed. 183; *Chenery* v. *Palmer*, 6 Cal. 123; *Delaware* v. *Ensign*, 21 Barb. 185; *Parshall* v. *Eggart*, 54 N. Y. 18; *Blakesley* v. *Rosmund*, 43 Wis. 116; *Stine* v. *Munch*, 24 Minn. 390; *Rathburn* v. *Berry*, 31 Pac. 679; *McKinney* v. *Wood*, 43 Mo. Appeals, 152.

An agreement which allows the mortgagor to remain in possession and dispose of the goods as before the mortgage was given, makes the mortgage void *per se*. *Wells* v. *Langbein*, 20 Fed. 189; *Lyon* v. *Bank*, 29 Fed. 556; *Robinson* v. *Elliott*, 22 Wall. 513; *Simmons* v. *Jenkins*, 76 Ills. 479; *Russell* v. *Winn*, 37 N. Y. 591; *Leopold* v. *Silverman*, 16 Pac. 581; Bump on Fraudulent Conveyances, Secs. 115-120.

MINER, J.

It appears from the findings in this case that George J. McKibbon was the owner and engaged in keeping a drug store under the title of the Park Terrace Pharmacy, and

for convenience the business was conducted by George E. Wright and he was the accredited owner of the business, so far as the public was concerned. The Nelden Judson Drug Company, a creditor of said pharmacy understood that McKibbon was the owner. About March 1, 1894, McKibbon sold his interest in the drug store to Wright for $700, and took his note therefor. At this time the Park Terrace Pharmacy was indebted to the Nelden Judson Drug Company in the sum of $426, which Wright assumed and agreed to pay. Wright continued to purchase goods of the Nelden Judson Drug Company, and on July 18, 1895, was indebted to them in the sum of $568. There was no change in the manner of extending credit. From the time Wright purchased until July 18, 1895, he paid the Nelden Judson Drug Company on account of the Park Terrace Pharmacy, $1800. In February 1895, McKibbon died in Iowa. This fact was not known to the Nelden Judson Drug Company until a chattle mortgage was afterwards filed covering the stock. On July 5, 1895, Julia B. McKibbon, the plaintiff, widow of George J. McKibbon, through her attorney, took a new note, in the place of the old one given to Mr. McKibbon, from Wright, payable to herself, for $694, due in 90 days and surrendered the old note. The note was secured by chattel mortgage on the stock of drugs. This mortgage purported to convey the same to plaintiff.

At the time the mortgage was given it was verbally agreed between Wright and the plaintiff that Wright should remain in possession of said mortgaged property and continue to sell the same in the usual coure of business; buy new goods, keep up the expenses of the store, and pay over the proceeds, if any, to the plaintiff, to apply on the indebtedness; and it was also agreed at the

18 Utah—6.

same time that it was not expected that the mortgage should be paid when due, and that the time should be extended from time to time in order that Wright could continue in business as before said mortgage was given; that thereafter Wright continued to sell said goods in the usual course of business; that his sales averaged about $4,000 per year, and that from July 5, to July 18, 1895, when the store was closed by attachment, Wright sold the average amount of goods, but did not account to the plaintiff for the proceeds of such sales or any part thereof; that on the 18th day of July, 1895, the Nelden Judson Drug Company commenced suit by attachment against the Park Terrace Pharmacy and Wright, to recover its account for goods sold amounting to $562, on the ground that said Wright had assigned and disposed of his property with intent to defraud his creditors; that defendant, as U. S. marshal, levied said writ upon said drugs and received the same into his possession; that on the 4th day of September, 1895, said attachment was set aside by the district court, on the ground that it was improperly and irregularly issued, and because the grounds stated in the affidavit of attachment were untrue in fact, but, that notwithstanding this the defendant continued to hold possession of said goods until December 9, 1895, when they were sold by the defendant on an execution issued on a judgment obtained in said suit, by said Nelden Judson Company against the said George Wright; that the defendant did not deposit with the county rocorder, or tender to any one the amount of the mortgage which covered said drugs, so sold on execution, and that plaintiff on the 23d day of July, 1895, notified the defendant that he would be held liable for said goods, unless he returned them, or paid the amount of the mortgage. This suit to recover the value of the goods was commenced

November 20, 1895. Defendant's amended answer was filed November 30, 1897. The amended answer set up fraud and want of consideration for the mortgage.

As a conclusion of law the court found that the chattel mortgage was invalid, fraudulent in law and void; that defendant was not obliged to deposit the amount secured by the mortgage with the county recorder, or any one else, and had a right to levy on said goods of George E. Wright, under the execution, as though the said mortgage had never been executed and delivered. Judgment was thereupon awarded to the defendant.

After stating the facts, MINER, J., delivered the opinion of the court:

The appellant contends that the court erred in holding under the facts found. First, "that defendant was in such privity with the property in controversy as to be entitled to contest the validity of plaintiff's chattel mortgage.

Second, the court erred in holding that a chattel mortgage on a stock of goods is fraudulent in law because the mortgagor is permitted to retain possession of and sell the goods, under an agreement to account to the mortgagee for the proceeds."

One of the most difficult questions in the law of chattel mortgages arises where a mortgage is given upon a stock of goods which by its condition permits the mortgagor to remain in possession and sell the property mortgaged, in the usual course of trade. According to about an equal division of authorities, a provision of this character renders the mortgage fraudulent in law as to creditors and third persons, without reference to the *bona fides* of the mortgage, or the intention of the mortgagor as to fraud. *Robinson* v. *Elliott*, 22 Wall. 513; 5 Am. & Eng. Enc. of Law (2d ed.) p. 992; Cobbey on Chattel Mortgages, Sec. 307.

While according to other authorities representing about one half of the states in the union, such a provision does not render the mortgage fraudulent *per se*, and the existence of fraud in such case, is a question of fact to be submitted to the jury. *Brett* v. *Carter*, 2 Lowell, (U. S.) 458; 5 Am. & Eng. Enc. of Law, *supra*; Jones on Chattel Mortgages, Sec. 425; Cobbey on Chattel Mortgages, *supra*.

The better rule is believed to be that where a stipulation of the character named is embraced in the mortgage, and is not controlled by statutory regulation, and the rights reserved to the mortgagor upon the face of the mortgage show conclusively that it is intended as a shield and protection of the mortgagor, and operates as a fraud upon the rights of the creditors of the mortgagor, the mortgage is void in law. *Robinson* v. *Elliott, supra;* 5 Am. & Eng. Enc. of Law, *supra*.

The agreement referred to between the mortgagor and mortgagee was verbal, and not contained in the mortgage. It is held that any agreement outside of the instrument permitting the sale of the property mortgaged, whether contemporaneous with or subsequent to the making of the mortgage, will have the same effect as if stipulated and read into it. 5 Am. & Eng. Enc. of Law, p. 994. *Simon* v. *Jenkins*, 76 Ill. 479. *Ford* v. *Williams*, 24 N. Y. 359.

In this case the testimony was all taken, and the case tried before the court without a jury, and the facts found by the court. Had the condition and agreement between the parties, as found by the court that, "at the time of the making of the said mortgage it was agreed between the said Wright and the said Julia B. McKibbon, that the said Wright should remain in possession of the said mortgaged property and continue to sell the same in the

usual course of business; buy new goods, keep up the expenses of the store, and pay over the proceeds, if any, to the said Julia B. McKibbon to apply on said indebtedness. And it was further agreed at the time of the giving of said mortgage that it was not expected that the same should be paid when due, that the same should be extended from time to time in order that the said Wright should continue in business as before said mortgage was given," been inserted in the mortgage as the law presumes such agreement should be, then it would have affirmatively appeared from the mortgage that it was intended as a shield and protection to the mortgagor, and would operate as a fraud upon the rights of the creditors of the mortgagor, and would therefore render the mortgage void in law. By such agreement the mortgagor is not only to remain in possession of the goods, and sell them; buy new goods, keep up the expenses of the store, and pay over the proceeds to apply on the indebtedness, but it was further agreed that it was not expected by the parties that the mortgage should be paid when due, but that it should be extended from time to time in order that the mortgagor should continue in business, the same as he did before the mortgage was executed. Under such a clause it would be quite possible for a dishonest mortgagor to remain in possession of the stock of goods indefinitely to the detriment of the mortgagee, and the irreparable injury of the creditors of the mortgagor. Such a clause in the mortgage would render it invalid under our statute, because it would leave the creditors entirely at the mercy of a dishonest mortgagor, to delay, hinder and defraud them of their lawful debts and demands. Comp. Laws, Utah, Secs. 2838 and 2801.

This was the probable result of the agreement between the parties in this case, as it appears that Wright made

sales amounting to $4,000 per year, yet he paid no money upon the mortgage, or upon the indebtedness it was given to secure after he purchased the stock, although he was continually selling the stock of goods at retail. It does not appear that the stock was being increased, or even kept up in the meantime, because it only brought $25, at the execution sale, while the claim against the mortgagor amounted to over $1100, so far as appears from the record. It does not appear from this showing, presented by the findings, that the mortgagor was dealing fairly with the creditors or even with the mortgagee. This condition of things may probably be traceable to the fraudulent agreement made between the parties.

It is also urged that the respondent was in no position to question the validity of the appellant's mortgage.

It appears that the respondent had a judgment against the mortgagor, and that execution was issued and levied upon the goods in question, and they were sold thereunder. The answer sets up the judgment, execution and sale, as well as the want of consideration for the mortgage, and the fraudulent execution thereof. No good reason is urged against the regularity of this proceeding. In order to justify the taking of goods covered by a mortgage, by a creditor, he must show his interest and lawful right against the property, either by an attachment properly issued, or upon an execution based upon a valid judgment, or in some other way. Cobbey on Chattel Mortgages, Sec. 774.

It appears this showing was made, and the sale was consequently justified because the mortgage was found invalid and fraudulent. The facts as found show that the mortgage was invalid and fraudulent in law.

If the verbal agreement is read into the mortgage, it becomes invalid and fraudulent in law. If not so read into the mortgage it was still invalid and fraudulent as

against the judgment creditors.    Where the facts are properly found, an erroneous conclusion, as to the particular nature or kind of fraud found, will not justify the court in setting aside the judgment because the conclusions of law are incorrect; where the findings of fact are correct, the judgment will not· be disturbed if it is entered in accordance therewith, even if the conclusions of law are incorrect in technical language.    *Maxfield* v. *West,* 6 Utah, 379; *O'Reilly* v. *Campbell,* 116 U. S. 418.

Upon the whole record we discover no reversible error.

The judgment of the district court is affirmed, with costs.

ZANE, C. J. and BARTCH, J. concur.