In re McLOON.

(District Court, D. Maine. July 1, 1908.)

No. 172.

1. BANKRUPTCY—"ACTS OF BANKRUPTCY"—CONVEYANCE WITH INTENT TO DEFRAUD CREDITORS.

To constitute an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a(1), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), by conveying property with intent to hinder, delay, or defraud creditors, there must have been an actual fraudulent intention which impeaches the bona fides of the transaction.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

2. SAME—INTENT TO PREFER CREDITOR—"ACT OF BANKRUPTCY."

An alleged bankrupt executed a mortgage of property to her son to secure him for advances made at the time and to be thereafter made to pay debts which she then owed. The mortgage was not recorded for several months, but she testified that she did not know such fact, but supposed it was recorded, that she considered herself solvent and expected to pay all of her creditors and made the mortgage to obtain further time and prevent a sacrifice of her property, and it was shown that between the time of the giving of the mortgage and the filing of the petition in bankruptcy her indebtedness was reduced, and that no new debts were contracted unless secured at the time. At the time of giving the mortgage the son was not a creditor. Held, that the giving of the mortgage was not an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a(1,2), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), either as a transfer made with intent to hinder, delay, or defraud creditors or to prefer a creditor.

In Bankruptcy. On involuntary petition.

Alan L. Bird and Joseph E. Moore, for petitioning creditors.
Arthur S. Littlefield and Albert S. Woodman, for alleged bankrupt.

HALE, District Judge. This case comes before the court upon the question of adjudication. Has the respondent committed an act of bankruptcy? The petition alleges:

"First. That said Adelle M. McLoon did convey, transfer, execute, and make a mortgage to Albert C. McLoon of Rockland, aforesaid, on the 9th day of September, A. D. 1905, as appears on the face of the deed, but which is acknowledged on September 9, 1906, and recorded in the Knox registry of deeds at Rockland on the 31st day of December, A. D. 1906, at 9:30 o'clock in the forenoon, in Book 139, p. 356, the aforesaid date of record being within four months prior to the date of the filing of this petition, of several pieces and par-

cels of real estate being then the owner thereof, that is, all her real estate in said county in whatever town and wherever situated, as more particularly described in said mortgage, with intent to hinder, delay, defraud her creditors, did make, execute, and transfer all her said property by mortgage aforesaid to Albert C. McLoon.

"Second. That said Adelle M. McLoon did execute and make a mortgage to Albert C. McLoon of Rockland, aforesaid, of all of her real estate in said county of Knox, in whatever town and wherever situated, as more particularly described in said mortgage, bearing date on the 9th day of September, A. D. 1905, as appears on the face of the deed, but which deed is acknowledged on September 9, 1906, and recorded in the office of the register of deeds in and for said county of Knox, at Rockland, on the 31st day of December, A. D. 1906, at 9:30 o'clock a. m. in Book 139, p. 356, the aforesaid date of record being within four months prior to the date of the filing of this petition, said Adelle M. McLoon being then insolvent, and then well knowing that she was insolvent, and being then indebted to said creditors and to Albert C. McLoon of Rockland and to divers other creditors, with intent to prefer over the other creditors said Albert C. McLoon who was then her creditor as aforesaid, did make and execute and transfer said property by mortgage as aforesaid."

The third allegation of an act of bankruptcy is general.

1. Did the respondent execute the mortgage to her son, Albert C. McLoon, with intent to hinder, delay, and defraud her creditors, as alleged in the first paragraph of the petition?

This allegation is drawn under section 3a (1) of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), which provides:

"Acts of bankruptcy by a person shall consist of his having conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay, or defraud his creditors, or any of them."

The intention which is brought into question by this act must be an actual intention. In Lansing Boiler Works v. Ryerson, 128 Fed. 701, 63 C. C. A. 253, in speaking for the Circuit Court of Appeals for the Sixth Circuit, Judge Severens said:

"The test of the conveyances intended by subsection 1 of section 3 is that of the bona fides of the transfer, for it is the well-settled law that a conveyance made in good faith, whether for an antecedent or present consideration, is not forbidden by such statutes, notwithstanding the effect may be that it hinders or delays creditors by removing from their reach assets of the debtor."

In Richardson v. Shaw (in an opinion recently reported, but as yet unpublished) 28 Sup. Ct. 512, 52 L. Ed. ——, the Supreme Court held that there is nothing in the bankrupt act which prevents an insolvent person from disposing of his property, provided his dealings are conducted without any purpose of defrauding his creditors or giving a preference to any of them. In speaking for the court, Mr. Justice Day cites with approval Cook v. Tullis, 18 Wall. 332, 340, 21 L. Ed. 933, where Mr. Justice Field said:

"There is nothing in the bankrupt act, either in its language or object, which prevents an insolvent from dealing with his property, selling or exchanging it for other property at any time before proceedings in bankruptcy are taken by or against him. provided such dealing be conducted without any purpose to defraud or delay his creditors or give preference to any one, and does not impair the value of his estate. An insolvent is not bound, in the misfortune of his insolvency, to abandon all dealing with his property; his creditors can only complain if he waste his estate or give preference in its disposition to

one over another. His dealing will stand if it leave his estate in as good plight and condition as previously."

In the case before me, the respondent testifies that she made the transfer to her son in good faith, supposing that she was solvent; that, just before she made the transfer, one of the banks which is now a petitioning creditor, solicited payment of some of her indebtedness which had become due; that she thereupon made the transfer to her son, to secure him for making the payment to the bank, and for the general purpose of securing him for advancements which he should make to pay her creditors, she believing then, and still believing, that her estate is sufficient to pay them in full; that she looked to her son to advance what might be necessary to prevent a sacrifice of her property, and to satisfy her creditors, until such time as sufficient money could be raised to pay them in full. In pursuance of the intention of the respondent and her son, her indebtedness has been reduced between the date of the giving of the mortgage, September 9, 1905, and the date of the filing of the petition in bankruptcy. No further debts were contracted during that time, unless the indebtedness was secured at the time it was incurred. The mortgage was not recorded at the time it was given, nor for some months after; but the testimony of the respondent is that she supposed it was recorded, and that she was surprised when she found it had not been recorded. It is in proof that on April 10, 1906, she gave her son a very comprehensive power of attorney, although not a general one. That paper is in evidence. The son testifies that, before this power of attorney, there had been another one "not nearly so strong"; but it is not put in evidence, so that the only power of attorney before me is the one dated April 10, 1906. I speak especially of this power of attorney, because it might be urged that, although she herself did not know that the mortgage was not recorded, still she would be estopped to set up this lack of knowledge in her own behalf if, at the date of the mortgage, there was an existing power of attorney to her son by which she made it possible for him, in her behalf, to withhold the mortgage from record, and thus make it a secret mortgage as against creditors whose debts should afterwards be incurred; but, as I have said, the mortgage is of an earlier date, and there were no unsecured debts incurred after it was made. The facts in this case do not show such failure to record a mortgage as can be held to be a part of a scheme to hinder, delay, and defraud creditors. In the Shaw Case (D. C.) 146 Fed. 273, the delivery of the mortgage was secret, and there was a distinct and affirmative understanding that the mortgage was not to be recorded. This court further discussed the question of the effect of a secret and unrecorded mortgage. In the Hanson Case, 155 Fed. 342, 352, this court held such state of facts to constitute a part of a conspiracy to defraud. In the case at bar, the testimony falls short of proving that the mortgage was secret, and that it was kept from record by a corrupt design upon the part of the respondent. The facts in the case induce the conclusion in my mind that the mortgage was not made with intent to hinder, delay, and defraud any part of her creditors, but with the general intention of paying all her creditors.

162 F.—37

2. Section 3a(2) of the bankrupt act provides that an act of bankruptcy by a person shall consist of his having "transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors."

The second allegation of this petition is drawn under the foregoing provision of the bankrupt act. In Richardson v. Shaw, supra, Mr. Justice Day, in his opinion, said:

"The bankrupt act, in section 60a, provides: 'A person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition, or after the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.' A 'creditor' is defined to include any one who owns a demand or claim provable in bankruptcy. Section 1, subd. 9, Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3419). It is essential therefore, in order to set aside the alleged preference, that Shaw & Co. at the time of the transfer should have stood in the relation of creditor to the bankrupt."

In the case before me, when Mrs. McLoon sought the assistance of her son to aid her in paying her creditors, he himself was not a creditor. The testimony shows that his aid was solicited in paying her creditors.

In the Andrews Case, 144 Fed. 922, 75 C. C. A. 562, it has been held by the Circuit Court of Appeals in this circuit that the intention to prefer must be an actual intention, and not an attributed one, and that it cannot be presumed from the fact alone that the debtor knew he was insolvent when he made the payment of the pre-existing debt. In Stevens v. Holway Company (D. C.) 156 Fed. 90, this court had occasion to cite the Andrews Case, and to quote the language of Judge Putnam. In the case now before the court, the testimony is persuasive that the debtor did not know that she was insolvent, and that she did not, in the language of Judge Putnam in the Andrews Case, "have knowledge of the essential facts which tend to produce the resulting consequences." The testimony convinces me that she sought the aid of her son, who was not a creditor; that she made the transfer to him with the intent, not in prefer a portion of her creditors, but to pay all of them.

I am forced to the conclusion that the petitioners have not sustained the burden upon them of showing that the alleged bankrupt has committed an act of bankruptcy.

The petition is therefore dismissed, with costs to the respondent.