JOHNSON-BAILLIE SHOE CO. et al. v. BARDSLEY, ELMER & NICHOLS.

(Circuit Court of Appeals, Eighth Circuit.  November 16, 1916.)

No. 4670.

1. COURTS ⟨key⟩359—PRECEDENCE—FEDERAL COURT.
   In determining whether a chattel mortgage is a conveyance working a fraud on creditors, the state law governs.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949; Dec. Dig. ⟨key⟩359.]

2. BANKRUPTCY ⟨key⟩57—FRAUDULENT CONVEYANCES—"ACT OF BANKRUPTCY"—CHATTEL MORTGAGES.
   A chattel mortgage provided that the mortgagors, who were engaged in the mercantile business and the total of whose debts amounted to about $8,000, might remain in possession of their property, which was worth about $12,000, disposing of it in the ordinary course of the business, applying the proceeds first to the payment of the expenses of the business, next to the payment for property pprchased to replenish the mortgaged property, and last to the reduction of the mortgage debt. The mortgagee was the largest creditor. When the mortgage was made, one of the mortgagors expected to obtain a loan on real property, which would be used to discharge the debt, and for that reason, until the loan was refused, the mortgage was withheld from record. Held that, under the Utah laws, the mortgage was not invalid as a conveyance intended to hinder, delay, or defraud creditors of the mortgagors, and so did not amount to an "act of bankruptcy," within Bankr. Act July 1, 1898, c. 541, § 3, subd. 1, 30 Stat. 546 (Comp. St. 1913, § 9587).
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 66, 69–79; Dec. Dig. ⟨key⟩57.
   For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

3. BANKRUPTCY ⟨key⟩57—ACTS OF BANKRUPTCY—"DELAY OF CREDITORS."
   As a debtor has the right until the commencement of bankruptcy proceedings to dispose of his property to secure and pay his debts with it, and to prefer one creditor over others, the giving of a chattel mortgage by a debtor to one of his creditors does not amount to a conveyance with intent to hinder, delay, or defraud creditors, made an act of bankruptcy by Bankr. Act, § 3, subd. 1, where the only intent to hinder, delay, or defraud creditors is to give the mortgagee priority; the subdivision having the same meaning as the statute of Elizabeth.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 66, 69–79; Dec. Dig. ⟨key⟩57.]

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BANKRUPTCY ⊚⟳91(1)—ACTS OF BANKRUPTCY—BURDEN OF PROOF.

Creditors, contending that a debtor's execution of a chattel mortgage was an act of bankruptcy, being a conveyance to hinder, delay, or defraud creditors, have the burden of proof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 137; Dec. Dig. ⊚⟳91(1).]

5. BANKRUPTCY ⊚⟳57—ACTS OF BANKRUPTCY—EVIDENCE—SUFFICIENCY.

A debtor's execution of a chattel mortgage in favor of his largest creditor *held*, under the evidence, not to be a conveyance intended to hinder, delay, or defraud creditors, which act constitutes an act of bankruptcy, within Bankr. Act, § 3, subd. 1.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 66, 69–79; Dec. Dig. ⊚⟳57.]

6. CHATTEL MORTGAGES ⊚⟳60—EXECUTION—VALIDITY.

The Utah laws require the attestation of a chattel mortgage by a subscribing witness to qualify it for record. The assistant credit manager of the mortgagee, who secured the mortgage for his principal, is, there being no statutory prohibition, competent to attest the execution of the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 115; Dec. Dig. ⊚⟳60.]

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Petition by the Johnson-Baillie Shoe Company, a corporation, and others, against Bardsley, Elmer & Nichols, a partnership, for adjudication of defendants in bankruptcy. From a decree dismissing the petition, petitioners appeal. Affirmed.

J. D. Skeen, of Salt Lake City, Utah (D. A. Skeen, of Salt Lake City, Utah, on the brief), for appellants.

A. E. Pratt, of Ogden, Utah, for appellees.

Before SANBORN, Circuit Judge, and TRIEBER and VAN VALKENBURGH, District Judges.

SANBORN, Circuit Judge. The appellants, petitioners below, filed their petition in the District Court for an adjudication of bankruptcy of the defendants below, Bardsley, Elmer & Nichols a partnership. The defendants answered, the issues were tried on their merits, and the court found for the defendants and dismissed the petition. The appellants insist that the decree was erroneous for three reasons: (1) That the chattel mortgage made by the defendants to one of their creditors, John Scowcroft & Sons Company, a corporation, in itself constituted the act of bankruptcy denounced by section 3, subd. 1, of the Bankruptcy Law, 30. Stat 544, 546, c. 541 (U. S. Comp. St. 1901, pp. 3418, 3422; 4 U. S. Comp. St. 1913, p. 4364, § 9587, subd. 1), that is to say, a conveyance of their property with intent to hinder, delay, or defraud their creditors; (2) that the chattel mortgage and the other evidence in the case proved that the defendants made the mortgage with that evil intent; and (3) that the fact that the only witness to the mortgage was the agent of the mortgagee disqualified the mortgage for record, and rendered it a

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

conveyance with the intent of the defendants to hinder, delay, and defraud their creditors.

[1, 2] The defendants were conducting the business of retail merchants with a general stock of merchandise in the town of Milford in the state of Utah. They were indebted to the Scowcroft Company, which was selling goods to them, in the sum of $3,000 and to other creditors to the amount of $4,000 or $5,000. The value of their property was about $12,000. One of the defendants had applied to a loan company for a loan of $3,000 on his individual real estate, which the defendants and the Scowcroft Company hoped and expected he would obtain in a few days, and that with it the defendants would reduce their indebtedness. The defendants had been indebted to the Scowcroft Company on their promissory notes for six months or more in the sum of $3,554.91; they had paid $554.91 of this debt in January, 1915, and on March 27, 1915, they made the chattel mortgage in question of their stock of goods and other personal property to secure the payment of the remainder of this indebtedness to the Scowcroft Company which was then past due. The application for the loan of $3,000 was pending, and the mortgagee agreed not to record the mortgage until it was informed whether or not the application for the loan was granted. It was not granted, and on April 29, 1914, the mortgage was recorded. The petition for adjudication of bankruptcy was filed on August 24, 1915. The statutes of Utah provided that no mortgage of personal property without the delivery of such property to the mortgagee should be valid unless the mortgage, duly witnessed by at least one person, provided that the property might remain in the possession of the mortgagor and was filed in the office of the proper recorder. This mortgage provided that the mortgagors might remain in possession of the property, that they might dispose of it in the ordinary course of their business as then conducted that the proceeds of the sale should be applied first to the payment of the costs and expenses of the operation of the business, second to payment for property purchased to replenish the mortgaged property, and that the property so purchased should become subject to the mortgage, and third to the payment of the debt secured by the mortgage.

Did this mortgage in itself establish the intent of the mortgagors to hinder, delay, and defraud their creditors by its execution, and hence the act of bankruptcy specified in section 3, subdivision 1, of the Bankruptcy Law? That and all other questions as to the validity of this mortgage, on the ground of the defendants' intent to hinder, delay and defraud their creditors thereby, must be determined by the settled law of the state of Utah, where the property was situated and where the mortgage was made. Etheridge v. Sperry, 139 U. S. 266, 277, 11 Sup. Ct. 565, 35 L. Ed. 171. Counsel argue that this question must be answered in the affirmative, and cite in support of their position Robinson v. Elliott, 22 Wall. 513, 515, 22 L. Ed. 758; McKibbon v. Brigham, 18 Utah, 78, 55 Pac. 66; Nelden-Judson Drug Co. v. Bank, 27 Utah, 59, 74 Pac. 195.

In Robinson v. Elliott, 22 Wall. 513, 515 (22 L. Ed. 758), the chattel

mortgage was made in Indiana. It contained a provision that the mortgagors might retain the possession of the stock of goods, sell them as theretofore, and supply their places with other goods, which should become subject to the mortgage; but it contained no provision or condition that the proceeds of the sales, after paying expenses of operation and of the replenishment of the stock, should be paid to the mortgagees or applied to the payment of their claim. The Supreme Court of Indiana had not determined whether or not such a mortgage in itself established the intent of the mortgagors to hinder, delay, or defraud their creditors, and thereupon the Supreme Court of the United States held that it did establish that intent, because it allowed the mortgagors to sell the goods as their own and to appropriate the proceeds to their own purposes. But the court also said:

"We are not prepared to say that a mortgage under the Indiana statute would not be sustained which allows a stock of goods to be retained by the mortgagor, and sold by him at retail for the express purpose of applying the proceeds to the payment of the mortgage debt. Indeed, it would seem that such an arrangement, if honestly carried out, would be for the mutual advantage of the mortgagee and the unpreferred creditors."

And in Etheridge v. Sperry, 139 U. S. 266, 275, 11 Sup. Ct. 565, 35 L. Ed. 171, that court said that in that and other cases it had held that a chattel mortgage was valid, notwithstanding stipulations therein for possession of the property by the mortgagor, his sale of it in the usual course of business, his payment of the cost of operation and of replenishing the stock out of the proceeds of the sale, and the payment of the remainder of the proceeds on the claim of the mortgagee.

In McKibbon v. Brigham, 18 Utah, 78, 84, 55 Pac. 66, 68, the mortgagor and mortgagee at the time the chattel mortgage was made entered into an oral contract that the mortgagor should remain in possession of the mortgaged stock of goods, sell them in the usual course of business, pay the expenses of operation, and pay over the proceeds to the mortgagee to apply on her claim. But they also agreed that it was not expected that the mortgage debt should be paid when it became due, but that it should be extended from time to time, "in order that the said Wright [the mortgagor] should continue in business as before said mortgage was given." The Supreme Court of Utah held that the mortgage was invalid, on the ground that the verbal agreement had the same effect it would have had if it had been written into the mortgage, and that the last clause of that agreement, to the effect that "the mortgage debt was not expected to be paid when due, but the time of payment should be extended from time to time, in order that the said Wright should continue in business," affirmatively evidenced the fact that the mortgage was intended as a shield and protection to the mortgagor. But there was no such clause in the mortgage, or in any contract of the parties to the mortgage, in the case now in hand.

In Nelden-Judson Drug Co. v. Bank, 27 Utah, 59, 65, 74 Pac. 195, 197, which was decided on a demurrer to a complaint in a suit to set

aside a chattel mortgage on a stock of goods, the Supreme Court of Utah held that the facts set out in the complaint, which it is unnecessary to recite here, were sufficient to render the mortgage void, but that "an agreement, expressed upon the face of a chattel mortgage, that the mortgagor may remain in possession of the goods, and sell the same in payment of the debt, does not, under our statute, * * * render the mortgage fraudulent and void." The above quotation, so far as we can ascertain, remains the established rule of law in Utah. The mortgage under consideration, therefore, did not in itself evidence an intent on the part of the parties to it, or of any of them, to hinder, delay, or defraud any of the creditors of the mortgagors, or the commission of the act of bankruptcy specified in section 3, subdivision 1, of the Bankruptcy Law.

[3] Do the chattel mortgage and the other evidence in the case establish the fact that this mortgage was made with the intent to hinder, delay, or defraud creditors, within the meaning of section 3, subdivision 1, of the Bankruptcy Law? An intent to hinder, delay, or defraud creditors unlawfully, not a mere intent to hinder or delay or defraud them so far as necessary to enable the mortgagee to collect his claim from the mortgaged property, by means of his mortgage, is indispensable to this intent. Until the commencement of bankruptcy proceedings a debtor has the right to dispose of his property, the right to secure and pay his debts with it, and the right to secure and pay one of his creditors in preference to others, provided the payment or security is not violative of any act of Congress or law of the state. There is no proof in this case that the chattel mortgage here in question violated any other provision of law than the part of section 3 which describes the first act of bankruptcy there mentioned. Hence the mere fact that the mortgage had the effect to prefer one creditor to another, or to hinder or delay other creditors until the mortgagee's claim could be collected, or even that it might have the effect to deprive other creditors of a means of obtaining payment of their claims, was not sufficient to constitute the act of bankruptcy charged, if the mortgage was given in good faith to secure the payment of an honest debt. Section 3, subdivision 1, must have the same construction as the statute of Elizabeth. An actual intent to hinder, delay, and defraud other creditors more than is necessary to secure the preferential payment of the debt of the mortgagee is essential to the act of bankruptcy there described. Coder v. Arts, 152 Fed. 943, 947, 82 C. C. A. 91, 95; Coder v. Arts, 213 U. S. 223, 243, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Lansing Boiler & Engine Works v. J. T. Ryerson & Son, 128 Fed. 701, 703, 63 C. C. A. 253, 255; Githens v. Shiffler (D. C.) 112 Fed. 505, 506, 507; In re Bloch, 142 Fed. 674, 676, 74 C. C. A. 250; Merchants' National Bank v. Cole, 149 Fed. 708, 711, 79 C. C. A. 414; In re McLoon (D. C.) 162 Fed. 575, 577.

[4, 5] The question here is, therefore: Was this mortgage given in good faith to secure the payment of the actual debt of the mortgagors, or was it given for the purpose and with the intent to shield the debtors from other creditors, and enable them to continue in business free

from attempts of the latter lawfully to subject the mortgaged property to the collection of their claims? The burden was on the appellants to prove the bad faith and evil intent which they charged. The court below heard the evidence, and found that the mortgagors had no intent to hinder or delay or defraud their creditors, and the presumption is that its finding was correct. All the evidence has been read by this court. It has considered all the facts which the evidence discloses, and among them the facts that, when the mortgage was made on March 27, 1915, the mortgagors owed about $8,000 and had personal property worth $12,000; that they owed the mortgagee $3,000 of this $8,000; that the mortgagee was their largest creditor; that its claim was past due; that it was furnishing them goods; that one of the mortgagors had applied for a loan of $3,000 from the "Western Loan" on his individual property, which they and Mr. Meckes, the assistant credit man of the mortgagee, who procured the mortgage for it, expected the partner would get in a few days, and with the proceeds of which the mortgagors were intending to pay $3,000 of their debts; that Meckes promised to withhold the chattel mortgage from the record until he learned whether or not the application 'for the loan was granted; that he recorded the mortgage on April 29, 1915; that nothing was paid on the mortgage debt until July; that meanwhile the mortgagors used some of the moneys received from their sales to pay small amounts to other creditors; that in July more rapid sales were made, and from $900 to $1,000 were paid from the proceeds upon the debt to the mortgagee; that one of the mortgagors testified that the mortgage was made to secure their debt to the Scowcroft Company in the hope and belief that in a few days they would have the $3,000 which had been applied for; and that it was not made with any intent to shield the mortgagors from, or to defraud, their creditors. The foregoing are the more important facts disclosed by the evidence. But neither they, nor the minor facts, which have not been recited, have proved sufficient to convince the court that the mortgagors made this mortgage with any intent to hinder, delay, or defraud any of their creditors.

[6] The statutes of Utah require the attestation of a chattel mortgage by the subscribing witness to qualify it for record, and this mortgage was attested by the signature of Mr. Meckes, the assistant credit man of the Scowcroft Company, who, in the discharge of his duty to secure and collect the claims of that company, procured and recorded the mortgage. It is contended' that the mortgage and its record were void as to creditors under this statute 'of Utah, because Meckes was the agent of the mortgagee, and on that account disqualified to act as a subscribing witness to the mortgage, and Donovan v. St. Anthony & Dakota Elevator Co., 8 N. D. 585, 80 N. W. 772, 46 L. R. A. 721, 73 Am. St. Rep. 779, in which the Supreme Court of North Dakota holds that under the statute of that state the mortgagee is not competent to be a subscribing witness to a mortgage, is cited. But in Fisher v. Porter, 11 S. D. 311, 77 N. W. 112, 113, the Supreme Court of South Dakota held under a like statute that a mortgagee was a proper subscribing witness to qualify a mortgage for

record. However that may be, the general rule is that all persons of proper age and sound mind, who are not proved to be disqualified, are competent subscribing witnesses to the execution of a written instrument. There is nothing in the statutes of Utah or in the general law of the land forbidding the assistant credit man, or any other like agent, of an employer from becoming a competent subscribing witness to a mortgage or other conveyance to his principal, which he has secured in the discharge of his duties, and the position of counsel upon this subject is untenable.

The decree below is affirmed.